UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAUREN M. PERRIN<br>    Defendant | CRIMINAL No. 19-cr-10088-MLW |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Andrew E. Lelling, United States Attorney, and Elysa Wan, Assistant United States Attorney for the District of Massachusetts, submits its sentencing memorandum. Consistent with the Probation Office's calculation of the Defendant's advisory guideline range of 63-78 months of imprisonment, the government recommends that the Court sentence the Defendant to a term of incarceration of 63 months, 3 years of supervised release, a fine of $25,000 and a $100 special assessment.

I.    FACTUAL BACKGROUND

Lauren Perrin violated her duties as a licensed practical nurse by depriving a dying woman of morphine so that Perrin could feed her own addiction.

Perrin was a Licensed Practical Nurse for almost twenty-five years, and was employed at Maplewood Center at various times from 2012 through January 4, 2018. PSR ¶¶ 79, 81. Maplewood is an in-patient facility that serves about 90 residents, including long-term care, dementia, hospice, mental health and recovery patients. PSR ¶ 10. One of Perrin's patients at Maplewood was Victim 1 an 88-year-old hospice patient who had dementia, frequent seizures, a

leg fracture, and shingles (a painful viral infection).  *Id.*  Victim 1 was supposed to be administered morphine three times a day for pain relief.  *Id.*

The charged conduct began on or around November 5, 2017 until Victim 1's death on November 26, 2017.  PSR ¶ 11.  During that time, PERRIN tampered with three morphine bottles belonging to Victim 1 by removing morphine from the bottles and replacing the missing morphine with cough syrup.  Two of the tampered morphine bottles were administered to Victim 1, and those bottles were found to only have 19% and 29% of the correct concentration of morphine sulfate.  PSR ¶ 12.  The third tampered morphine bottle was discovered before it was administered to Victim 1, and it only had 3.9% of the correct concentration of morphine sulfate.  *Id.*

PERRIN admitted to tampering to with Victim 1's bottles during an interview with law enforcement agents in May 2018.  Nor was Victim 1 Perrin's only victim—Perrin admitted to taking opiates from her nursing jobs since 2015.  PSR ¶ 64.

II.     ADVISORY SENTENCING GUIDELINES

Neither the government nor the defendant had any objections to the PSR, which calculated Perrin's advisory guideline sentencing range of 63-78 months of imprisonment, as set forth below.  *See* PSR at ¶¶ 18-28.

| | |
|---|---|
| Base Offense Level: | 25 (U.S.S.G. § 2N1.1) |
| Vulnerable Victim: | + 2 (U.S.S.G. § 3A1.1) |
| Abuse of Trust: | + 2 (U.S.S.G. § 3B1.3) |
| Acceptance of Responsibility: | -3 (U.S.S.G. § 3E1.1) |
| Total Offense: | 26 |

**Total Offense Level 26 + Criminal History Level I: 63-78 months**

The vulnerable victim (U.S.S.G. § 3A1.1) and abuse of trust (U.S.S.G. § 3B1.3) enhancements are appropriate and have been applied in this circuit in similar circumstances. In *United States v. Stella*, for example, a registered nurse stole painkillers and replaced the missing medicine with saline solution to conceal her theft. 591 F.3d 23, 30 (1st Cir. 2009). The First Circuit held that the vulnerable victim enhancement applies to patients who were vulnerable "by reason of their illnesses and the need for medication." *Id.* at 30. Here, Victim 1 was the definition of vulnerability: an 88-year-old hospice patient with dementia, frequent seizures, a leg fracture, and painful shingles. PSR ¶ 10. The First Circuit held that the abuse of a position of trust enhancement was appropriate because the defendant—like Perrin—"worked independently of regular supervision when caring for her patients[,]had authority to provide patients with their prescribed medications[, and] had unsupervised access to drugs in the locked meds cabinet." *Id.* at 28; *see also United States v. Wilson*, 2006 WL 1663244, at *4 (D. Idaho 2006 May 30, 2006) (applying the abuse of position of trust enhancement because the defendant's position as a registered nurse "enabled [the defendant] to both commit and conceal the offense of tampering with drugs" in pediatric unit); *United States v. Segura*, No. 04-1342, 2005 WL 1566748, at *2 (10th Cir. Jul. 6, 2005) (applying abuse of trust enhancement for nurse convicted of tampering with drugs).

III. SENTENCING FACTORS

In determining a defendant's sentence, the court must consider the Sentencing Guidelines and determine the advisory sentencing guideline range which, once calculated, establishes the court's "starting point" or "initial benchmark." See *Gall v. United States*, 522 S. Ct. 38, 49 (2007). Next, the court should consider the various factors set forth in 18 U.S.C. § 3553(a). Only after consideration of those factors should the court reach its ultimate determination. *See United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008). In weighing the § 3553(a) factors, the

First Circuit has emphasized that an individualized determination is, at all times, the touchstone: while a deviation from the guidelines may be warranted in certain instances; in other instances, it will not be.

The government recognizes that the advisory guidelines for this crime are significant. But the guideline range is appropriate given the gravity and brutality of Perrin's crime. Perrin acted deliberately and repeatedly, she acted with the full weight of her medical training and experience. She knew how terribly sick the victim was, she knew how important the painkillers were, and she knew that the victim was helpless and unable to advocate for herself. Perrin nonetheless emptied the vials of morphine as they were delivered, and administering the diluted morphine to Victim 1 over and over again. She ignored the victim's suffering and ignored the potential harmful effects of the cough syrup that she used to disguise crime.

The defendant justifies its 20-month of prison recommendation by citing the sentences in *United States v. Roberge*, dkt. no. 16-cr-40024-TSH, and *United States v. Torres,* dkt. no. 14-cr-40035-TSH. But Perrin's crime is fundamentally different from Roberge and Torres's because Perrin inflicted direct harm on a specific patient. There was no evidence in *Roberge* or *Torres* that any patient actually received the tampered painkillers. In *Roberge*, the defendant diluted morphine in emergency kits, which were not administered to patients. Dkt. no. 16-cr-40024-TSH, ECF. no. 99. In *Torres*, the defendant removed fentanyl from vials stored on an ambulance, but again, there was no evidence that the diluted vials were actually administered to any patients.

Instead, this case is most comparable to *United States v. Stella*, where the defendant was sentenced to 54-months of incarceration. *United States v. Stella*, 591 F.3d 23, 25–26 (1st Cir. 2009). Like Perrin, the defendant in *Stella* took drugs directly from patients and gave them

diluted medicine.  The defendant (1) took painkillers from patient-controlled analgesia (PCA) pumps, replacing the missing liquid with saline solution and (2) gave patients altered fentanyl patches.  Like the victims in *Stella*, the victim here did not receive "adequate pain medication and would therefore have continued to suffer pain."  *Id.*

IV.     CONCLUSION

For all of these reasons, the Government submits that the recommended sentence of a term of incarceration of 63 months of imprisonment, 3 years of supervised release, a fine of $25,000 and a $100 special assessment is both necessary and appropriate.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     */s/ Elysa Wan*
ELYSA WAN
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                           */s/ Elysa Wan*
                                           Elysa Wan
                                           Assistant United States Attorney

Date: November 20, 2019